**Stanley Charles TOPPING, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 88SC392.**

Supreme Court of Colorado,
En Banc.

June 25, 1990.

Castelar Garcia, Manassa, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *People v. Topping*, 764 P.2d 369 (Colo. App.1988), the Colorado Court of Appeals affirmed the trial court's order permitting a prosecution witness to testify at trial by telephone against the petitioner, Stanley Charles Topping, and affirmed Topping's convictions of first degree sexual assault, first degree burglary and felony menacing. We granted Topping's petition for certiorari review to consider whether the trial court's order permitting telephonic testimony violated Topping's rights of confrontation under the sixth and fourteenth amendments to the United States Constitution and article II, section 16, of the Colorado Constitution. We conclude that the trial court erred in permitting such testimony, but that the error was harmless in this case. We therefore affirm the judgment of the Court of Appeals.

I

On January 22, 1982, in Alamosa, Colorado, a person wearing a ski mask entered a woman's apartment through an unlocked door while she was asleep. The assailant awakened the woman, covered her mouth with his hand, threatened her with a knife and sexually assaulted her. As he left, the assailant warned the victim not to report the assault. The victim immediately ran to her sister's house, contacted the police, and was transported to the Alamosa County Hospital where she was examined and treated by Dr. Vicki Hawes. Local police officers obtained hair samples of the assailant at the victim's home.

Two years later, Topping was arrested in Longmont, Colorado, in connection with two alleged sexual assaults. After undergoing an initial interrogation, Topping was transported to the Boulder County Jail. Eric Ackerman, a former police officer and a childhood friend of Topping, learned of the arrest and visited the jail. During their conversation, Topping told Ackerman that he had committed a sexual assault in Alamosa, Colorado, in 1982.[1] Topping was subsequently charged in this case with first degree sexual assault,[2] first degree burglary,[3] and felony menacing.[4]

During trial the People filed a motion requesting the trial court to permit Dr. Hawes, then a Kentucky resident, to testify by telephone concerning her examination of the victim and her opinion that the victim had been sexually assaulted. The People informed the trial court that Dr. Hawes was under subpoena and would appear if required to do so, but that, in view of an illness in her family and a planned visit to Colorado three or four days after the date of the trial, a trip to Colorado to testify would be highly inconvenient. Topping opposed the motion on the ground that any telephonic testimony would violate his federal and state constitutional rights to confront witnesses face-to-face at his trial.

The trial court granted the People's motion. In so doing, the trial court expressed interest in effective utilization of communi-

---

1. Topping described the Alamosa victim's house, stated that he had entered the house through an unlocked door wearing a ski mask and indicated that he held a knife to the victim while sexually assaulting her.

2. Section 18–3–402, 8 C.R.S. (1982 Supp.).

3. Section 18–4–202, 8 C.R.S. (1982 Supp.).

4. Section 18–3–206, 8 C.R.S. (1982 Supp.).

cation technology. The trial court also noted that it had previously authorized use of telephonic testimony in civil cases.

At trial Dr. Hawes testified by telephone that in 1982 she had examined the victim, observed signs of forced penetration, and performed a vaginal smear test. She also testified that results of the test revealed the presence of sperm and that in her medical opinion the victim had been sexually assaulted. Topping's attorney then cross-examined Dr. Hawes.[5]

The jury returned guilty verdicts on all counts. The trial court subsequently sentenced Topping to concurrent sentences of twenty-four years on the sexual assault conviction, eight years on the first degree burglary conviction and two years on the felony menacing conviction.

## II

The sixth amendment to the United States Constitution states in pertinent part as follows:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.... [6]

U.S. Const. amend. VI. The Supreme Court has observed that "the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The Court has repeatedly emphasized that this right has occupied a central role in our universe of criminal justice since its early incorporation into the constitutional framework of this nation. *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94

L.Ed.2d 40 (1987); *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *Kirby v. United States*, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899); *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

In *Coy v. Iowa*, the Supreme Court concluded that this fundamental right "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." 487 U.S. at 1016, 108 S.Ct. at 2800. At Coy's trial, a screen was placed between the defendant and two child witnesses that prevented the witnesses from seeing Coy during their testimony. In holding that this statutorily authorized procedure violated Coy's sixth amendment right to confront adverse witnesses at trial, the Court noted that the preservation of the right was essential both to ensure the appearance of trial fairness and the reality of a fair trial. *Id.* at 1018–19, 108 S.Ct. at 2801–02 (quoting *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). The Court noted that the right of confrontation consisted of at least two primary elements, the right to require physical presence and the right of cross-examination.

---

**5.** Dr. Hawes was asked only four questions on cross-examination. Topping did not controvert the fact that the victim had been sexually assaulted.

**6.** The confrontation clause of the sixth amendment is applicable to state prosecutions by means of the due process clause of the fourteenth amendment to the United States Constitution. *Ohio v. Roberts*, 448 U.S. 56, 62, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980).

*Id.* 487 U.S. at 1017, 108 S.Ct. at 2801; *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987).

■ Conceding that Topping was denied the right to confront Dr. Hawes face-to-face, the People argue that the sixth amendment right of confrontation is not absolute and that the trial court's order may be sustained under the circumstances of this case. It is true, as the Supreme Court pointed out in *Coy,* that the right of confrontation is not necessarily absolute. 487 U.S. at 1020, 108 S.Ct. at 2802. For example, the scope of a defendant's cross-examination of an adverse witness who testifies at trial may be limited by trial courts. *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *People v. Loscutoff,* 661 P.2d 274 (Colo.1983). *See People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978) (statute restricting scope of cross-examination of sexual assault victim not unconstitutional). Admission of hearsay testimony against defendants in criminal proceedings may also be viewed as an exception to the full protection of the confrontation clause. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *People v. Dement,* 661 P.2d 675 (Colo.1983). However, in the cases addressing those two classes of exceptions to the rule requiring strict enforcement of confrontation clause rights the fundamental issue of the scope of the right to face-to-face confrontation of adverse witnesses at trial was not the primary focus of judicial scrutiny. *See Coy v. Iowa,* 487 U.S. at 1020–21, 108 S.Ct. at 2802–03. The Supreme Court did address that issue in *Coy,* and concluded that the policies embodied in those exceptions must yield to the principles of fundamental fairness in judicial proceedings embodied in the confrontation clause.

The People suggest that the decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, should be applied here, and that the circumstances of this case satisfy the test therein enunciated. In *Ohio v. Roberts,* the Supreme Court held that introduction into evidence at the defendant's trial of the transcript of prior preliminary hearing testimony of an adverse witness did not violate the defendant's sixth amendment right of confrontation. In reaching this conclusion, the Court applied a two-part test: whether the prosecution had established that the hearsay declarant was unavailable and whether the proffered testimony bore substantial indicia of reliability. *Id.* at 65, 100 S.Ct. at 2538.

■ In our view, *Ohio v. Roberts* is not applicable to the facts of this case.[7] The issue in that case was whether application of an evidentiary rule authorizing limited use of hearsay evidence was constitutionally permissible. The question in this case is whether a defendant may be denied the right to confront an adverse witness who would be inconvenienced by enforcement of a subpoena to testify at trial. Furthermore, the defendant in *Ohio v. Roberts* had been afforded an opportunity to cross-examine the declarant at the preliminary hearing and the prosecution had not been able to locate the declarant despite exerting substantial efforts to do so. Topping had not been afforded any opportunity to cross-examine Dr. Hawes. Finally, in this case Dr. Hawes was not unavailable; she indicated that she would appear, although to do so would be inconvenient. Mere inconvenience of a witness does not constitute unavailability. *People v. Diefenderfer,* 784 P.2d 741, 750 (Colo.1989). Assuming that the issue raised here could be categorized as a question involving the admissibility of hearsay evidence, the People failed to satisfy the unavailability prong of the *Ohio v. Roberts* test.[8]

7. In *People v. Dement,* 661 P.2d 675 (Colo.1983), we adopted the *Ohio v. Roberts* test in addressing challenges to the admission of hearsay evidence in a criminal trial based on both federal and state constitutional grounds.

8. The trial court emphasized that because the witness was a physician—a neutral witness—the reliability of her testimony was quite substantial. Whatever the merit of that conclusion, the People must establish a declarant's unavailability before questions of the reliability of the proffered statements may be addressed. *People v. Dement,* 661 P.2d 675, 681 (Colo.1983).

 Moreover, the People did not merely seek to introduce hearsay evidence.[9] The People requested permission to present "live" testimony to the jury via telephone rather than in person, which testimony pointedly included the witness' ultimate opinion that the victim had been sexually assaulted. Neither the People's desire to minimize witness inconvenience nor the trial court's interest in the application of electronic communication technology to the judicial process, however laudable such concerns might be, constitutes a state policy of sufficient substance to justify abridgment of Topping's sixth amendment right to confront Dr. Hawes face-to-face when she testified against him. We therefore conclude, contrary to the determination of the Court of Appeals, that in granting the People's motion to permit telephonic testimony in this case the trial court erroneously abridged Topping's sixth amendment right of confrontation.[10]

### III

 Although the trial court's order permitting Dr. Hawes to testify by telephone violated Topping's sixth amendment right to confront adverse witnesses face-to-face at trial, we conclude that the error in admitting the evidence was harmless. Crim.P. 52(a). Errors in the admission of evidence, even of constitutional dimension, do not require reversal of a criminal conviction if the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Germany v. People*, 198 Colo. 337, 599 P.2d 904 (1979). *See Coy v. Iowa*, 487 U.S. at 1012, 108 S.Ct. at 2798; *People v. Ragland*, 747 P.2d 4 (Colo.

App.1987), *cert. denied.* To determine whether an error of constitutional dimension is harmless, an appellate court must examine the facts of the case to determine whether the error affected the outcome of the trial. *Graham v. People*, 705 P.2d 505 (Colo.1985).

Dr. Hawes' testimony was relevant only with respect to the question of whether the victim had been sexually assaulted. Topping at no time contested the People's assertion that the victim had been sexually assaulted.[11] The victim's testimony that she had been sexually assaulted by a masked intruder was sufficient in and of itself to establish that a sexual assault had occurred. *Martinez v. People*, 160 Colo. 534, 422 P.2d 44 (1966). *See People v. Fierro*, 199 Colo. 215, 606 P.2d 1291 (Colo. 1980); *People v. Graham*, 678 P.2d 1043 (Colo.App.1983), *cert. denied* 467 U.S. 1216, 104 S.Ct. 2660, 81 L.Ed.2d 366 (1984). Topping's confession [12] and testimony to the effect that hair found at the victim's house matched samples of Topping's hair provided further support for a finding that a sexual assault had occurred. Under these circumstances, we conclude that the trial court's error in permitting Dr. Hawes to testify by telephone, though violative of Topping's sixth amendment right to confront this adverse witness at trial, was harmless beyond a reasonable doubt.

### IV

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

---

9. The People did not, for example, simply seek admission of Dr. Hawes' 1982 report.

10. Because we decide the issue on federal grounds, we do not address Topping's state constitutional challenge to the trial court's order. *People v. District Court*, 719 P.2d 722 (Colo. 1986); *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984); *People v. Bowman*, 669 P.2d 1369 (Colo.1983); *People v. Dement*, 661 P.2d 675 (Colo.1983); *People v. Bastardo*, 191 Colo. 521, 554 P.2d 297 (1976).

11. At the commencement of voir dire Topping's attorney informed the potential jurors that Top-

ping was not contending that no sexual assault had occurred, but rather that some other person committed the offense. Topping's attorney also reminded the jury at the outset of the defendant's closing argument that "[f]rom the beginning, in jury selection, you heard me say that we believed the evidence would show that a sexual assault occurred that night."

12. Although Topping initially appealed the trial court's order denying his motion to suppress his confession, he has not presented that issue to this court.